OPINION OF THE COURT
John D. Capilli, J.
A petition for visitation with the children, Lori E. and Michael E., was filed by the paternal grandparents, Frances and Eugene E., on March 8, 1984, through the Nassau County Probation Department, Intake Unit, of the Nassau County Family Court. The petition alleges, in part, that:
“12. * * * Respondents are natural parents and have had children since birth. Parental Grandparents have been denied visitation with two grandchildren since birth and have never seen grandchildren * * *
“14. That it would be in the best interest of the children to have visitation awarded to the Petitioners for the following reasons: Petitioners love their grandchildren and wish to establish an emotional bond with their grandchildren.”
The petition states that petitioners do not know the birth dates of their grandchildren, but that Lori is five years old and Michael is 10 months old.
All parties and petitioners’ counsel appeared before the court on April 17,1984. The matter was adjourned to afford respondents the opportunity to obtain counsel.
*165 On May 2, 1984, petitioners appeared in person and by their attorney, Eugene R. Hurley, Jr. Respondents appeared in person and by their attorney, James A. Murphy. Teresa S. Reardon was appointed by the court as Law Guardian to represent Lori and Michael. The parties, their respective counsel, and the Law Guardian signed a stipulation consenting to a complete investigation and report into all the pertinent facts and circumstances, including forensic evaluations, by the Nassau County Probation Department.
Thereafter, respondents, by Martin Guggenheim, Esq., moved, by notice of motion returnable June 19, 1984, to dismiss the petition herein on the grounds that section 72 of the Domestic Relations Law is inapplicable to an “intact family” and, in the alternative, that section 72 is unconstitutional. The affidavit of service annexed to respondents’ moving papers indicates service upon the Attorney-General of the State of New York, petitioners’ counsel, and the Law Guardian.
The notice of motion, memorandum of law in support, memorandum in opposition, reply memorandum and affirmation in opposition of the Law Guardian were submitted on June 19, 1984, at which time the court reserved decision.
Section 72 of the Domestic Relations Law provides: “Where either or both of the parents of a minor child, residing within this state, is or are deceased, or where circumstances show that conditions exist which equity would see fit to intervene, a grandparent or the grandparents of such child may apply to the supreme court for a writ of habeas corpus to have such child brought before the court; and on the return thereof, the court, by order, after due notice to the parent or any other person or party having the care, custody, and control of such child, to be given in such manner as the court shall prescribe, may make such direction as the best interest of the child may require, for visitation rights for such grandparent or grandparents in respect to such child.” Prior to the adoption of section 72 of the Domestic Relations Law, a grandparent had no right of visitation with his grandchild over the objection of the child’s parent. (See, e.g., Matter of Noll *166 v Noll, 277 App Div 286; Matter of Geri v Fanto, 79 Misc 2d 947.) The enactment of section 72, while not establishing that a grandparent has an absolute right to visit with a grandchild, does provide “a procedural vehicle through which grandparents might assert that visitation of the child or children residing in this State is warranted”. (Lo Presti v Lo Presti, 40 NY2d 522, 526.)
The motion presently before the court asserts that section 72 of the Domestic Relations Law must be interpreted by the court as being inapplicable to an “intact family”, or in other words, as not providing a procedural vehicle through which a grandparent may assert that visitation with a child residing within an “intact family” is warranted. The motion further asserts that the failure to exclude the “intact family” from being subject to a section 72 proceeding renders the statute unconstitutional.
Courts in the State of New York have entertained grandparent visitation petitions in cases where neither parent is deceased but where “circumstances [have shown] that conditions exist which equity would see fit to intervene”. In Matter of Johansen v Lanphear (95 AD2d 973) the Third Department affirmed an order of the Family Court which awarded grandparents visitation with their grandson. The child’s parents were both living, but had been divorced. (See, also, Augustine B. C. v Michael B., 84 AD2d 740; Matter of Alam v Alam, 436 NYS2d 609.) In Matter of Layton v Foster (61 NY2d 747) the New York State Court of Appeals affirmed an order of the Appellate Division, Third Department, awarding paternal grandparents visitation with a grandchild after the grandchild had been adopted by the natural mother’s present husband. The natural father was alive and had consented to the adoption. To this court’s knowledge, the only published case of grandparents being permitted to utilize section 72 of the Domestic Relations Law to assert that visitation with a grandchild who resided with both natural parents in an “intact family” was wárranted is Matter of La Russo (NYLJ, Aug. 10, 1983, p 14, col 6). In that case, Judge Sondra Miller conducted a bifurcated proceeding and, before considering whether or not visitation would be in the children’s best interests, first determined whether conditions existed under which equity *167 would see fit to intervene. After finding that the grandparents had made extensive efforts to foster a relationship with their grandchildren by such means as attending school events and establishing savings accounts for the children, and after hearing testimony on the grandparents’ character and reputation, Judge Miller determined that conditions did exist under which equity should intervene and ultimately ordered visitation, based on the best interests of the children. Other than La Russo (supra) there is no reported authority on the issues raised in respondents’ motion.
The reasoning asserted by respondents in the case herein for excluding an “intact family” from being subject to a petition under section 72 of the Domestic Relations Law is the Fourteenth Amendment right of parents to raise their families as they see fit. (Prince v Massachusetts, 321 US 158; Santosky v Kramer, 455 US 745.) This right to be free from State interference, however, inures to all parents and should have no greater application to parents who are married and residing together in an “intact family”. To assert that, as a matter of law, a widowed, divorced, remarried, or unmarried parent is subject to greater State interference than a married parent would be to assert that the former is less fit than the latter to raise his or her own child.
By attempting to exclude the “intact family” from application of section 72 of the Domestic Relations Law, the respondents are, in actuality, asserting that the section should be interpreted as only providing a grandparent with a derivative right of visitation, based upon the right of the deceased or noncustodial parent. Prior to the 1975 amendment, section 72 of the Domestic Relations Law provided that only the grandparents of a child “who * * * are the parents of [a] deceased parent” could petition the court for visitation. Only a grandparent whose own child was deceased had a derivative right to petition for visitation with a grandchild. Under this type of strictly derivative statute, a maternal grandfather could not petition for visitation during the mother’s lifetime with a grandchild born out of wedlock or a grandchild whose father had died, even in a case where the maternal grandfather might be the only *168 living male relative available to the child. The 1975 amendment to section 72 of the Domestic Relations Law, by deleting the language “who * * * are parents of [a] deceased parent” and replacing it with “where circumstances show that conditions exist which equity would see fit to intervene”, rejected the limited derivative approach and expanded the statute to provide a vehicle for grandparent visitation on a case-by-case basis, including a case of nonderivative visitation by the parent of a custodial parent.
There are States that currently permit grandparents to petition for visitation, only in cases where there has been a disruption of the marital relationship through death, separation, or divorce. Legislation introduced in Congress proposing the adoption of a uniform State act seeks to provide grandparents with a uniform right to petition State courts for visitation following dissolution of a marriage by death, divorce, or separation. (See Foster and Freed, The Child’s Right to Visit Grandparents, 20 Trial [March, 1984], p 38.) These visitation statutes assume that the deceased or noncustodial parent would have afforded the grandparent visitation, and in cases where there has been a death or a dissolution of a marriage, where a parent no longer can provide visitation for his or her own parent, the State will intercede to provide such visitation if the visitation is in the grandchild’s best interests. By amending section 72 of the Domestic Relations Law, the Legislature of the State of New York chose not to adopt a limited “derivative right approach”, but, instead, gave the court discretion to direct visitation where “circumstances show that conditions exist which equity would see fit to intervene”. Section 72 of the Domestic Relations Law, by giving the court discretion, overcomes the limitations of derivative visitation statutes, which improperly focus only on the grandparent’s right to visit and ignore the child’s right to know his grandparent and which fail to provide a vehicle for visitation in cases where a marriage either never existed or continues to exist. Further, section 72 of the Domestic Relations Law, as amended, provides a vehicle for a visitation application by the parent of a custodial parent.
*169 An indication of the legislative intent on the issue of grandparent visitation is set forth in the memorandum to the Governor, Senate Bill 613-A, which provides: “This bill seeks to enable the court to intervene in certain situations to provide visitation rights for grandparents in respect to their grandchildren if the situation warrants it. There appears to be a variety of potential situations where the utilization of such a resource could be of invaluable consequence to the children and ultimately the society.” (NY Legis Ann, 1975, p 51; emphasis added.)
It appears clear that the legislative intent was to give the court discretion “in a variety of situations” and there is no evidence that the Legislature intended to enact a derivative visitation statute excluding a petition for visitation with a grandchild residing with both married parents in an “intact family”. One clear example of such a “situation” would be a case in which a grandparent had been the grandchild’s physical custodian for an extended period. The court could entertain a visitation petition against an “intact family”, even in the absence of extraordinary circumstances.
Further, just as the Legislature has considered the “invaluable consequence to the children”, the courts of this State have consistently focused not on the right of the grandparent, but on the benefits to the child from visitation with a grandparent. “ ‘Visits with a grandparent are often a precious part of a child’s experience and there are benefits which devolve upon the grandchild * * * which he cannot derive from any other relationship”. (Matter of Ehrlich v Ressner, 55 AD2d 952; Lo Presti v Lo Presti, supra; Matter of Johansen v Lanphear, supra.)
The Court of Appeals, in People ex rel. Sibley v Sheppard (54 NY2d 320), in awarding visitation to grandparents after the adoption of a grandchild, recognized as a general principle that the family itself is not beyond regulation in the public interest. The court held that a petition pursuant to section 72 of the Domestic Relations Law should be tested under the standard of whether the State’s interest in regulating the family relationship bears “a ‘reasonable relation to any end within the competency of the State’ ” (supra, p 327). This test must be applied by the court on a *170 case-by-case basis to a “variety of situations”. A court could apply the test set forth in Sibley (supra) and find it reasonable to order visitation for a grandparent with a grandchild who resides with both married parents in an “intact family”. Section 72 of the Domestic Relations Law may, under appropriate circumstances, be applied to an “intact family”, absent a showing of extraordinary circumstances, and such application made pursuant to the “test” set forth in Sibley (supra) would be constitutional.
Respondents’ motion to dismiss is denied. As it is not apparent from the petition itself or from the papers filed in opposition to the motion to dismiss that “circumstances * * * exist which equity would see fit to intervene”, a hearing is necessary in order for the court to determine that issue and, if such circumstances exist, to further decide in its discretion, “in the light of what is required in the best interest of the * * * children”, whether visitation should be granted. (Lo Presti v Lo Presti, 40 NY2d 522, 527, supra; Matter of Scranton v Hutter, 40 AD2d 296.) As the determination of the issues of “equitable circumstances” and “best interest of the children” will require similar, if not identical, evidence, the court sees no necessity to conduct a bifurcated hearing.
The proceeding is adjourned to September 20,1984 for a hearing. Petitioner shall bear the burden of proving that circumstances exist under which equity should intervene. (Matter of La Russo, supra.) If, during the course of the hearing, “it should * * * become evident to the court that independent evidence [is] needed” (Giraldo v Giraldo, 85 AD2d 164,172), the court will order forensic examinations of the parties, pursuant to section 251 of the Family Court Act.