■ AUGUSTINE B. C., Respondent, v MICHAEL B., Appellant. — In a habeas corpus proceeding pursuant to section 72 of the Domestic Relations Law to determine the visitation rights of the petitioner grandfather, the father appeals from a judgment of the Supreme Court, Nassau County (Oppido, J.), entered August 19, 1980, which, after a hearing, *inter alia,* granted the petition. Judgment affirmed, without costs or disbursements. Petitioner, as maternal grandfather of two children, seeks to obtain visitation rights pursuant to section 72 of the Domestic Relations Law. The natural father, Michael B., opposes the application on several grounds, primary among which is that petitioner has not shown that he has been denied reasonable opportunity for visitation. Both children are girls; the older was born on August 27, 1971, and the younger was born on May 17, 1974. On May 16, 1977 appellant was granted a judgment of divorce from his then wife, Kathleen, the daughter of petitioner. By stipulation the divorce decree gave custody of the children to appellant, with visitation rights to Kathleen. Such visitation, which was bi-weekly, was to be under the supervision of another adult because Kathleen was the unfortunate victim of a mental illness. Petitioner was named as one such possible supervising adult, and as a practical matter it appears that he served in that capacity on a regular basis for the next two to three years. During that time period, Kathleen was hospitalized on several occasions. In April of 1980 Kathleen was again hospitalized because of her psychological problems. Although she was hospitalized, she was able to obtain occasional

passes in order to leave the hospital to visit her children and family. When she attempted to arrange such a visit with her children, her former husband, appellant, demanded that visits occur in his parents' home until such time as he was assured by her psychiatrist that the children would not be harmed in any way by seeking their mother in her present condition. The divorce judgment and stipulation pertaining to visitation contained no provision as to where visitation was to occur. In effect appellant was, on his own, adding an additional term to the visitation provisions. Kathleen and petitioner refused to agree to appellant's demand. Shortly thereafter petitioner commenced the instant proceeding on his own behalf. At the hearing on the writ, petitioner testified that on all his visits with the children the latter were happy and enjoyed themselves. He had been seeing them on a regular basis in the company of their mother. On cross-examination he indicated that he himself directly had never been refused an opportunity to see the children. Appellant testified that he was concerned about the children seeing their mother in an unprotected setting because there was some indication that when the older child saw her mother during the period of her most recent hospitalization, the child's asthmatic condition worsened. There was no testimony that the children were adversely affected by seeing petitioner. To the contrary, appellant stated that he was gratified petitioner was interested in the children, and was happy to allow petitioner an opportunity to visit with the children, but believed that an order of visitation, with a structured and rigid time scheme, was unnecessary and counterproductive. He argued that this was particularly so because he had recently remarried and his "new" family was in the process of developing. Special Term found regular visitation by petitioner was in the best interests of the children. Petitioner was granted bi-weekly visitation rights. During those periods when Kathleen was able to visit her children, petitioner was to exercise his right of visitation coextensively with the visitation of Kathleen. However, petitioner's right was independent, so that when Kathleen was unable to see the children, petitioner could still exercise his right. In our view the record supports Special Term's finding that the equities favor regular and reasonable visitation by petitioner with his grandchildren. This is particularly true during those periods when the children's mother cannot visit the children herself due to hospitalization. (See *Matter of Ehrlich v Ressner,* 55 AD2d 953; *Matter of Vacula v Blume,* 53 AD2d 633; cf. *Lo Presti v Lo Presti,* 40 NY2d 522; *Matter of Scranton v Hutter,* 40 AD2d 296.) The experience of the prior few years of visitation between petitioner and the children, in the company of petitioner's daughter Kathleen, is sufficient to demonstrate that continued visitation by petitioner was and is in the best interests of the children. We further find that Special Term was correct in ordering such visitation at this juncture. The basis for visitation in this instance, as set forth in section 72 of the Domestic Relations Law, is in those cases where "equity would see fit to intervene." Special Term had before it the detailed history of litigation involving the questions of visitation as between mother and children and the necessity for modifying such visitation so as to include the supervisory presence of petitioner during such visitation. In addition, Special Term had before it the testimony of the appellant, an attorney, in which he demonstrated his reluctance, if not resistance, to any structured visitation as between petitioner and grandchildren. Based upon the entire record as presented, it cannot be said that Special Term erred in determining it to be in the best interests of the children that such visitation be allowed the petitioner. Lazer, J.P., Gulotta, Margett and Bracken, JJ., concur.